IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TIERRA LAND, Individually;
 And, on Behalf of All Others Similarly Situated          PLAINTIFF

VS.                    CASE NO. 6:21-CV-6153-SOH

CENTERFOLD ENTERTAINMENT CLUB, INC.; and,
 JESSIE ORRELL                                            DEFENDANTS

## STATEMENT OF GENUINE ISSUES
## OF MATERIAL FACT
## IN DISPUTE

Pursuant to Local Rule 56.1, Defendants file the following Statement of Genuine Issues of Material Fact in Dispute in Support of their Memorandum Brief and Opposition to the Motion for Partial Summary Judgment.

The alleged facts below correspond to the Moving Party's Statement of Uncontroverted Facts. These facts are followed thereafter by additional material facts and supporting evidence of Defendant showing a genuine issue of material fact in dispute and, that viewed in the context of the five of the *Silk* factors cited by the Plaintiff, the facts in this case show

**Statement of Genuine Issues of Material Fact In Dispute**

that the dancers at Defendants' nightclub were not employees of Defendants but, simply independent contractors.

## MOVING PARTY'S ALLEGED UNDISPUTED MATERIAL FACTS

### 1. Degrees of Control.

Defendants exercised close control over the exotic dancers at Centerfold. Each dancer was required to adhere to a weekly schedule and was subject to a set of written rules, requirements, and policies. Decl. of Tierra Land, ECF No. 10-7 at ¶¶ 13-14. According to the rules, dancers were not allowed to decline assignments, such as refusing to dance for a customer whom they found personally objectionable. Id. Dancers were required to be available to work at certain, pre-arranged times. Id. Dancers were not allowed to leave work until Defendants said they could leave. Id. Dancers did not have the opportunity to negotiate their pay with Defendants nor did they have any input in setting prices for Defendants' customers. Id. The rules established a dress code for the Case 6:21-cv-06153-SOH Tierra Land, et al. v. Centerfold Entertainment Club, Inc., et al. U.S.D.C. (W.D. Ark.) No. 6:21-cv-6153-SOH Brief in Support of Plaintiff's Motion for Partial Summary Judgment dancers and dictated other requirements that gave Defendants total control over almost every aspect of their employment. Id. All rules were enforced by fines imposed on dancers. Id. at ¶¶ 10-11. This is precisely the kind of control that courts have found indicative of an employer-employee relationship.

**Defendants' Response No. 1:**

The Declarant, Jessie Orrell, in his Declaration filed hereto with, stated that at Centerfold, the Entertainers show up when they want, they leave when they want (Para. 1), and no one Dancer stays for any extended period of time. They may come in and work for 3 days and you may not see them for 3 weeks, they come and go as they please. (Para. 11) Centerfold provides the environment, everything else is up to the Entertainer, they control how much they make, how much they work, whether they are only going to work the stage and not the floor, they have

**Statement of Genuine Issues of Material Fact**
 **In Dispute**

---

the right to turn down drinks and/or dances. If they don't want to interact with a certain client, they don't have to. (Para. 13).

  **2. Opportunities for Profit or Loss and Investment in Facilities.**

  Regarding the second and third Silk factors, Defendants made all of the significant investments and bore all of the risk for financial loss. Dancers at Centerfold did not advertise their services, nor did they make any investment in the business beyond the clothes they wore and the fines extracted from them by Defendants. The dancers simply performed at Defendants' facility for the customers Defendants had drawn there, so that the dancers' opportunities for profit were entirely dependent on Defendants' success as promoters. Given the limited capital put at risk by exotic dancers, the Courts have recognized that "dancers are far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investment." Circle C., 998 F.2d at 328 (quoting Brock v. Mr. W. Fireworks, Inc., 814 f.2d 1042, 1051 (5th Cir. 1987) (internal quotation marks omitted)). While Plaintiff and other dancers could increase their incomes to a certain extent by working harder for more tips, as a waiter in a restaurant might, Plaintiff had no stake in the profit or loss incurred by the business. See Harrell, 992 F. Supp. at 1352 ("As is the case with the zealous waiter at a fancy, four star restaurant, a dancer's stake, her take and the control she exercises over each of these are limited by the bounds of good service; ultimately, it is the restaurant that takes the risks and reaps the rewards."). Even in cases where it is demonstrable that dancers spend thousands of dollars per year on costumes and makeup, courts have universally recognized that any investment by an exotic dancer in the accoutrements of her work is minor compared to the "obvious significant investment" involved in operating a nightclub. Harrell, 992 F. Supp. at 1350; Circle C, 998 F.2d at 328. Here, there is no specific evidence as to how much any Plaintiff spent on her clothes, but Defendants' much greater investment in running a night club is self-evident. As in every FLSA case on record regarding exotic dancers, this factor tilts strongly in favor of a determination that Plaintiff and other dancers are employees

  **Defendant's Response No. 2:**

  At Centerfold, the Entertainers show up when they want, they leave when they want, they can wear what they want are not require them to purchase anything; and does not control their music (Para 2, Declaration).

**Statement of Genuine Issues of Material Fact**
 **In Dispute**

---

The Entertainer controls how much they make, how much they work, if they are only going to work the stage and not the floor, they have the right to turn down drinks and/or dances. If they don't want to interact with a certain client, they don't have to. (Para. 13)

### 3.     Permanency of Relation.

Dancers' employment with Centerfold had a measure of permanence. While there may have been some turnover among dancers at Centerfold, the dancers who worked there tended to work full-time. Decl. of Tierra Land, ECF No. 10-7 at ¶¶ 8-9 (Tuesdays-Saturdays). Dancers were required to be available to work at certain, prearranged times and were not allowed to leave work until Defendants said I could leave. Id. at ¶ 13. By monopolizing dancers' time, Defendants guaranteed the dancers' economic dependence—the hallmark of an employer-employee relationship under the FLSA. Several courts have observed that that exotic dancers tend to be itinerant. Even where dancers come and go with some frequency, courts consistently find that "[t]he transient nature of the work force is not enough . . . to remove the dancers from the protections of the FLSA." Circle C, 998 F.2d at 328-329; Thompson, 779 F. Supp. 2d at 150 ("Many of the courts that have found exotic dancers to employees under the FLSA did so despite finding the employment relationship lacked a high degree of permanence.").

**Defendants' Response No. 3:**

The Entertainers show up when they want, they leave when they want, they can wear what they want. (Declaration, Para. 1). No one Dancer stays for any extended period of time. They may come in and work for 3 days and you may not see them for 3 weeks, they come and go as they please. (Para. 11)

**Statement of Genuine Issues of Material Fact**
 **In Dispute**

---

### 4.     Skill Required in the Claimed Independent Operation

Finally, dancers' work at Centerfold was not marked by any special skill or initiative. If a Centerfold dancer performed particularly well, she could not command a higher price; prices for dancers' services were set by Defendants. Decl. of Tierra Land, ECF No. 10-7 at ¶¶ 8-9. Defendants did not expect dancers to have any formal training, nor did Defendants provide any training. The only initiative a dancer could exercise was the salesmanship she employed as she developed a rapport with paying customers. However, Courts have repeatedly said that exercise of this sort of initiative does not suggest that one is an independent contractor. Priba, 890 F. Supp. at 593 ("The ability to converse with club clientele in an effort to generate a larger tip is not the type of initiative contemplated by Silk."). Rather, an exotic dancer's lack of specialized skills indicates that she is an employee.

### Defendant's Response No. 4:

1.     Centerfold provides them, for their half of money they pay, with a building to perform, Security, a safe place to work, DJ equipment and, a DJ, who they tip out, as Centerfold is not involved in tipping or paying the DJ. Centerfold provide insurance, (trip and fall for occupants of building) and they are required to do their own taxes (Declaration, Para, 3 and 4.)

Respectfully submitted,

By:     _____/s/ Travis J. Morrissey_____
Travis J. Morrissey, Arkansas Bar #99033
**Morrissey Law Firm**
835 Central Avenue – Suite 509
Hot Springs, Arkansas 71901
(501) 623-7372 or 622-6767 Telephone
(501) 623-2822 Facsimile
Electronic Mail - tjm@tjmlegal.com
Website – Hotspringslawyer.net
