IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TIERRA LAND, Individually and on
Behalf of All Others Similarly Situated                                            PLAINTIFF

v.                                    Case No. 6:21-cv-6153

CENTERFOLD ENTERTAINMENT
CLUB, INC. and JESSIE ORRELL                                                       DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion for Partial Summary Judgment. ECF No. 32. Defendants have responded to the motion. ECF No. 41. Plaintiff has filed a reply. ECF No. 45. The Court finds this matter ripe for consideration.

### I. BACKGROUND

Plaintiff alleges that, while she and other dancers performed as exotic dancers for Defendants, they were not paid a minimum wage or overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et seq. The Court has conditionally certified a collective composed of all dancers employed by Defendants since November 23, 2018.

Jessie Orrell is the owner and sole shareholder of Centerfold Entertainment Club, Inc. ("the Club"), which provides adult entertainment in Hot Springs, Arkansas. Plaintiff performed at the Club from approximately August 2017 to September 2020. She generally worked from Tuesday to Saturday, which averaged around thirty-five hours per week. As part of her job, Plaintiff would perform dances on stage at the Club and give personal dances to patrons called "lap dances." However, Plaintiff spent most of her time working on "the floor," which is the non-stage area of the Club.

Plaintiff and other dancers were not paid an hourly wage or a salary. Instead, they were paid $10 per drink they sold and $10 to $50 per dance they performed. They also received tips from patrons. During shifts when the Club was not very busy, Plaintiff alleges that she and other dancers were not able to sell enough drinks or dances to make minimum wage for all hours worked. Defendants uniformly classified exotic dancers as independent contractors.

Defendants did not require dancers to have previous dance experience before they could be hired, and Defendants did not provide training to dancers. Defendants set the hours of operation for the Club. Plaintiff claims that she and other dancers were not allowed to decline assignments, such as refusing to dance for a patron. Plaintiff alleges that the dancers were required to be available to work at certain, pre-arranged times and were not allowed to leave work until Defendants gave them permission. Plaintiff also claims that the dancers were required to dress according to Defendants' dress code and to follow Defendants' policies and rules.

Separate Defendant Jessie Orrell claims that the dancers set their own hours, chose whether they were going to work on the stage or the floor, and were allowed to decline dances for any patron. Orrell states that the dancers were not required to adhere to a dress code and could choose their own music. Orrell admits that he did have one rule pertaining to the dancers' schedule: a dancer must work at least one weekday prior to working a Friday or Saturday.

Plaintiff argues that she was an employee of the Club, as opposed to an independent contractor, and thus entitled to minimum wage under the FLSA. She moves the Court to grant summary judgment in her favor regarding this one issue.

## II. LEGAL STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252. "There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) (quotation omitted).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). "The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli*, 996 F.3d at 863. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The Court is tasked with determining whether Plaintiff and other dancers were employees of the Club, as opposed to independent contractors, for purposes of the FLSA. The FLSA statute defines an employee as "any individual employed by an employer," and states that "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(e)(1), (g). The statute broadly defines

3

employer[1] as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The Supreme Court has noted that the FLSA defines the employment relationship "expansively" and with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

Many courts employ the economic realities test to determine whether an individual is an employee or an independent contractor under the FLSA. *Karlson v. Action Process Service & Private Investigations, LLC* 860 F.3d 1089, 1092 (2017). Under this test, courts typically analyze the following six factors: (1) the degree of control exercised by the clubs over the business operations; (2) the relative investments of the clubs and dancers; (3) the degree to which the dancers' opportunity for profit and loss is determined by the clubs; (4) the skill and initiative required by the dancers in performing the job; (5) the permanency of the work relationship; and (6) the extent to which the work performed by the dancers is an integral part of the clubs' business. *See, e.g.*, *Harrell v. Diamond A Ent., Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997); 51 A.L.R. Fed. 702, § 2.5 (collecting cases). "[T]he final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976). If, after applying the six factors and viewing them in their totality, Plaintiff has "shown that there is no doubt as to the relationship between the parties, the court may determine as a matter of law that the worker is an employee or independent contractor." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 268 (D. Md. 2014), *aff'd*. 825 F.3d 235 (4th Cir. 2016) (citations omitted).

---

[1] The parties do not appear to dispute that Defendants are employers as defined by the FLSA.

4

### A. Degree of Control

In examining the degree of control exercised by the Club, the key inquiry is whether the dancer's "freedom to work when she wants and for whomever she wants reflects economic independence, or whether these freedoms merely mask the economic reality of dependence." *Harrell*, 992 F. Supp. At 1349 (citing *Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995)). The Court looks "not only at the club's rules and guidelines regarding dancers' performances and behavior, but also the club's control over the atmosphere and clientele." *McFeeley*, 47 F. Supp. 3d at 268 (internal quotation and citation omitted). "An entertainer can be considered an independent contractor only if she exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery*, 527 F.2d at 1312-13.

Plaintiff asserts that Defendants exercised significant control over her work. Defendants point out that Plaintiff and other dancers enjoyed many freedoms, such as the freedom to come and go as they pleased, the freedom to choose what they wore, the freedom to choose how they entertained, and the freedom to choose with whom they interacted.

The undisputed facts suggest that Defendants exercised considerable control over the dancers. Defendants set the prices for dances and drinks and kept a portion of the proceeds. Plaintiff and other dancers were required to "tip out" the Club DJ. Defendants required Plaintiff and other dancers to work at least one day during the week if they wanted to work on Friday or Saturday. Defendants set the hours of operation for the Club and had the exclusive authority to create Club policies. Defendants also had exclusive control over the clientele and atmosphere of the Club.

Viewing the evidence in the light most favorable to Defendants, some of the underlying facts relevant to this factor are in dispute. It is disputed as to whether Plaintiff and other dancers

were allowed to decline assignments, were required to be available to work at certain pre-arranged times, were allowed to leave work without permission, were fined for breaking certain rules, and were required to adhere to a dress code. Thus, the Court cannot consider these facts in its analysis. However, on balance, considering only the undisputed facts, the Court finds that this factor of the economic realities test cuts in favor of economic dependence. Although Plaintiff and other dancers enjoyed a certain amount of flexibility at the Club, the control exercised by the Club reflects the reality that the dancers were economically dependent on the Club. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

### B. Relative Investments of the Parties

Separate Defendant Orrell is the sole shareholder and owner of the Club. Defendants provide the facilities, stage, tables, sound system, liability insurance, and security. Defendants also pay for the music rights to songs that are played in the Club. Further, the Court assumes that Defendants pay for a business license to operate the Club. On the other hand, Plaintiff and other dancers are responsible for their costumes and cosmetics. Compared to the considerable investments of the Club, Plaintiff's investments are obviously relatively minor and indicative of their employment. *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993) (finding that a dancer's investments in costumes and a padlock pale in comparison to a nightclub that "owns the liquor license, owns the inventory of beverages and refreshments, leases fixtures for the nightclub (e.g., the stage and lights), owns sound equipment and music, maintains and renovates the facilities, and advertises extensively"). Accordingly, the Court finds that this factor of the economic realities test weighs in favor of Plaintiff.

### C. Plaintiff's Opportunity for Profit and Loss

Defendants argue that this factor favors them because the dancers have complete autonomy

6

over how they conduct themselves and thus control how much money they make. "The ability of an exotic dancer to entice her customers to give large tips is known in the industry as 'hustling.'" *Thompson v. Linda and A., Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011) (citing *Harrell*, 992 F. Supp. 1343 at 1350-52). Although it is apparent that Plaintiff's and other dancers' abilities to earn tip income while performing at the Club were dependent to a degree on their own initiative, hustle, costume, and rapport with customers, courts have not found the "hustling" argument to be relevant in evaluating the opportunity for profit or loss factor of the economic realities test. *See id.* Instead, the appropriate inquiry has more to do with the relative investments of the parties (as discussed above) and who has control over larger aspects of the business. The district court in *Harrell* explained:

> That a dancer may increase her earnings by increased 'hustling' matters little. As is the case with the zealous waiter at a fancy, four-star restaurant, a dancer's stake, her take and the control she exercises over each of these are limited by the bounds of good service; ultimately, it is the restaurant that takes the risks and reaps the returns.

*Harrell*, 992 F. Supp. at 1352.

Here, Plaintiff and other dancers will never have the same opportunity for profit as the Club. Plaintiff has no ownership interest in the Club, and she bears no risk of economic loss. The worst the dancers at the Club can do on any given night is to make no money if they receive no tips or dance fees. On the other hand, Defendants are responsible for the hours, location, advertising, management, maintenance, and aesthetics of the Club. Because of their significant role in bringing business into the Club, Defendants have a better opportunity for profit and loss. *See Priba Corp.*, 890 F. Supp. at 593 ( finding that "[e]entertainers do not control the key determinants of profit and loss of a successful enterprise").

The dancers in this case, as in others, are "far more closely akin to wage earners toiling for

a living, than to independent entrepreneurs seeking a return on their risky capital investments." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1051 (5th Cir. 1987), *cert. denied*, 484 U.S. 924 (1987). Accordingly, the Court finds that this factor of the economic realities test weighs in favor of Plaintiff.

### D. Degree of Skill and Initiative Required by Plaintiff

This Court agrees with the "[m]any other Courts [that] have previously found that little specialized skill is required to be a nude dancer." *Thompson*, 779 F. Supp. 2d at 149 (citations omitted). Plaintiff and other dancers at the Club receive no training, and the Club does not require the dancers to possess any specialized training, certification, or skill. As for initiative, the Court finds that a "dancer's initiative is essentially limited to decisions involving her costumes and dance routines." *Circle C. Invs., Inc.*, 998 F.2d at 328. Thus, the Court finds that this factor of the economic realities test weighs in favor of Plaintiff.

### E. Permanency of the Working Relationship

"The more permanent the [working] relationship, the more likely it is that a court will find a worker to be an employee." *Thompson*, 779 F. Supp. 2d at 150. In this case, Plaintiff worked for the Club for approximately three years. However, the Court notes that the exotic dancing profession is generally regarded as being a rather transient one. It is unknown to the Court how long other dancers tended to remain at the Club. Accordingly, the Court finds that this factor of the economic realities test weighs against Plaintiff.

### F. Extent to Which the Work is an Integral Part of the Business

The main service the Club provides for its customers is entertainment by exotic dancers. "Exotic dancers are obviously essential to the success of a topless nightclub." *Harrell*, 992 F. Supp. at 1352. It is apparent to the Court that the work performed by Plaintiff and other dancers

is an integral part of the Club's business. Therefore, the Court finds that this factor of the economic realities test weighs in favor of Plaintiff.

### G. Consideration of All the Factors

The only factor that does not weigh in favor of Plaintiff is the permanence or duration of the working relationship; however, no factor in the economic realities test is dispositive. "Many of the courts that have found exotic dancers to be employees under the FLSA did so despite finding the employment relationship lacked a high degree of permanence." *Thompson*, 779 F. Supp. 2d at 150.

Ultimately, Plaintiff and other dancers at the Club were not independently in the business of exotic dancing. Instead, they were "dependent upon finding employment in the business of others." *Circle C. Invs.*, 998 F.2d at 329. Analysis of the economic realities factors leads this Court to conclude that Plaintiff and other dancers were employees of the Club for purposes of the FLSA.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) should be and hereby is **GRANTED**. The Court finds that Plaintiff and other dancers were employees of the Club as defined by the FLSA.

**IT IS SO ORDERED**, this 26th day of September, 2023.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge